UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


RHONDA D. JOHNSON                                                    PLAINTIFF

     VS.          Civil No. 2:14-cv-02260-MEF

CAROLYN W. COLVIN,                                                  DEFENDANT
Commissioner of Social Security Administration


### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Rhonda D. Johnson, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.        Procedural Background:

Plaintiff filed her application for DIB on August 16, 2012, and for SSI on September 12, 2012, alleging an onset date of January 1, 2009, due to hearing loss and depression. (T. 213) Plaintiff's applications were denied initially and on reconsideration. (T. 113-115, 116-119, 122-123, 124-125) Plaintiff then requested an administration hearing, which was held in front of Administrative Law Judge ("ALJ"), Hon. Ronald L. Burton, on May 29, 2013. Plaintiff was present and represented by counsel.

1

At the time of the hearing, Plaintiff was 52 years of age and had the equivalent of a high school education. (T. 36, 150) Plaintiff requested, and the ALJ approved, an amended onset date of June 28, 2012. (T. 40) Plaintiff's past relevant work experience included working in general sales from 1976 to 2008 and as a boot and shoe laborer from 1992 until June 28, 2012. (T. 214)

On July 26, 2013, the ALJ found Plaintiff's disorder of the bilateral knees and marked hearing loss in the right ear and reduced hearing in the left ear severe. (T. 25) However, the ALJ determined Plaintiff's medically determinable impairments of depressive disorder and anxiety disorder did not cause more than minimal limitation in the Plaintiff's ability to perform basic mental work activities and, therefore, were nonsevere. (T. 25) Considering the Plaintiff's age, education, work experience, and the residual functional capacity ("RFC") based upon all of her impairments, the ALJ concluded Plaintiff was not disabled from June 28, 2012, through the date of his Decision issued July 26, 2013. The ALJ determined Plaintiff had the RFC to perform light work except the Plaintiff could not do work requiring excellent hearing. (T. 27)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on October 24, 2014. (T. 1-5) Plaintiff then filed this action on December 17, 2014. (Doc. 1) This matter is before the undersigned for Report and Recommendation. Both parties have filed briefs, and the case is ready for decision. (Doc. 12 and 13)

## II.    Applicable Law:

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must

2

affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy

given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.    Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff had not been disabled from the alleged date of onset on June 28, 2012, through the date of the ALJ's Decision issued July 26, 2013. Plaintiff raises five issues on appeal, which can be summarized as: (A) the Appeals Council erred when they failed to consider newly admitted evidence; (B) the ALJ failed to fully and fairly develop the record; (C) the ALJ erred in step-two of his analysis; (D) the ALJ conducted an improper credibility analysis; (E) the ALJ erred in his RFC determination; and, (F) the ALJ erred in step four of his analysis. (Doc. 12, pp. 9-16)

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

**Appeals Council Review:**

After the ALJ issued his decision, the Plaintiff requested review by the Appeals Council. She submitted new evidence in the form of Dr. Robert L. Spray's psychological examination conducted on August 23, 2013. The Appeals Council denied Plaintiff's request for review, finding that the additional evidence she submitted did not provide a basis for changing the ALJ's decision because the information submitted was about a later time. (T. 2) Plaintiff argues that the Appeals Council's

denial must be reversed because it failed to consider the entire record, and the new and material evidence showed a lack of substantial evidence supporting the ALJ's decision. Because the Appeals Council denied review, finding that the additional evidence did not provide a basis for changing the [ALJ's] decision, the Court does not review the Appeals Council's decision to deny review; but rather, the Court determines if the record as a whole, including evidence that is new and material, supports the ALJ's determination. *Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000).

The Appeals Council must consider additional evidence if it is new and material and relates to the time period before the ALJ's decision. *See* 20 C.F.R. § 404.970(b); *Williams v. Sullivan*, 905 F.2d 214, 215-216 (8th Cir. 1990). The timing of the evidence, however, is not dispositive of whether the evidence is material. *Id.* To be material, evidence obtained after an ALJ decision need only relate to the claimant's condition on or before the date of the ALJ's decision. *See Basinger v. Heckler*, 725 F.29 1166, 1169 (8th Cir. 1984). Therefore, medical evidence dated after the ALJ's decision is material if it relates to the claimant's condition on or before the date of the ALJ's decision. *See Cunningham*, 222 F.3d at 502. In the case of Dr. Spray's opinion, there was no indication that his opinion related back to the time period in question; thus, the Appeals Council appropriately determined that Dr. Spray's opinion was not relevant to the time period in question.

**Fully and Fairly Develop the Record:**

Plaintiff asserts the ALJ failed to fully and fairly develop the record when he failed to order a medical source statement from Dr. Terry L. Efird, state agency medical consultant, as required under Social Security Ruling 96-5p. (Doc. 12, pp. 9-10) The Court disagrees.

5

The ALJ owes a duty to a Plaintiff to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994). After reviewing the record, the undersigned finds the record contained sufficient evidence for the ALJ to make an informed decision, thus remand is unnecessary.

"A disability claimant is entitled to a full and fair hearing under the Social Security Act." *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (internal quotations and citation omitted). Where "the ALJ's determination is based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," the claimant has received a "full and fair hearing." *Id*. (internal quotations and citation omitted).

"Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, about what an individual can still do despite a severe impairment(s), in particular about an individual's physical or mental abilities to perform work-related activities on a sustained basis. Adjudicators are generally required to request that acceptable medical sources provide these statements with their medical reports." Social Security Ruling 96-5p.

Dr. Efird performed a mental diagnostic evaluation of the Plaintiff on October 8, 2012. Plaintiff indicated she filed for disability secondary to her hearing issues. Plaintiff wore one hearing aid

during the evaluation. Plaintiff indicated she was anxious and felt depressed most of the time. Plaintiff denied a history of inpatient and outpatient mental health treatment. (T. 396) Plaintiff was taking Sertraline and Lorazepam at the time of the examination. Plaintiff indicated she took the medications as prescribed, did not have any side effects, and they were beneficial. (T. 396) Plaintiff indicated the lack of treatment was due to financial restrictions. (T. 396)

Dr. Efird diagnosed Plaintiff with depressive disorder, not otherwise specified; anxiety disorder, not otherwise specified; and, assessed a global assessment of functioning (GAF) score of 60-70. Plaintiff indicated she could drive unfamiliar routes, handled personal finances, and performed activities of daily living adequately. However, Plaintiff had been socially isolated due to her difficulty hearing. (T. 398) Dr. Efird observed Plaintiff communicated and interacted in an intelligible, effective, and reasonably socially adequate manner. (T. 399) Dr. Efird opined Plaintiff had the capacity to perform basic cognitive tasks required for basic work like activities. She appeared able to track and respond adequately; completed most tasks during the evaluation with no remarkable problems with persistence; and, completed most tasks within an adequate time frame. Dr. Efird opined Plaintiff was able to manage funds without assistance. (T. 399)

While Plaintiff argues that Dr. Efird did not provide a medical source statement, she is mistaken. Dr. Efird offered his medical opinion regarding the effects Plaintiff's mental impairments had on her adaptive functioning. (T. 398-399)

Further, the record contained treatment records from Dr. Robert Parrott, Plaintiff's primary care physician; C.O. Palmer, M.S., CCC-Audiologist; Dr. Gordon Troy Birk, orthopedic surgeon; and, Dr. John Brandt, gastroenterologist. The record also contained the following examination reports. Christal Janssen, Ph.D., state agency non-examining medical consultant, reviewed the

7

record and determined Plaintiff had a severe medical impairment of hearing loss not treated with cochlear implantation (T. 65-70); however, she did not have any severe mental impairments. Dr. Lance Manning, Ear, Nose, & Throat Center of the Ozarks, performed an audiological evaluation showing Plaintiff had mild to moderately severe sensorineural hearing loss, AS and mild to severe sensorineural hearing loss, AD, and Plaintiff was a candidate for hearing amplification. (T. 404-406) Dr. James Wellons, state agency non-examining medical consultant, reviewed the evidence and determined Plaintiff retained the RFC to perform light work with a restriction from jobs requiring excellent hearing. (T. 65-74) Dan Donahue, Ph.D., state agency non-examining medical consultant, reviewed the evidence and found no evidence of a severe mental impairment. (T. 89-96) Dr. Bill F. Payne, state agency non-examining medical consultant, reviewed the record and determined Plaintiff retained the RFC to perform light work with a restriction from jobs requiring excellent hearing. (T. 96-98)

In addition to the medical records and consultative examinations, the ALJ considered Plaintiff's testimony, records submitted to the Commissioner, and a third party statement in assessing Plaintiff's RFC. The undersigned finds the record contained sufficient evidence for the ALJ to make an informed decision. In order for the Court to reverse or remand this case, the Plaintiff must demonstrate unfairness or prejudice resulting from the ALJ's failure to obtain a medical source statement from Dr. Efird, and she has failed to meet that burden. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (absent unfairness or prejudice, we will not reverse or remand).

**Step Two Analysis:**

Plaintiff alleges the ALJ erred in evaluating the severity of Plaintiff's mental impairment. (Doc. 12, pp. 10-11) The undersigned has reviewed the record and finds substantial evidence supports the ALJ's step two analysis.

As mentioned above, the Commissioner uses a five-step sequential process to evaluate and determine if a claimant is disabled. *Simmons v. Massanari*, 264 F.3d 751, 754 (8th Cir. 2001); See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Step two of the evaluation states that a claimant is not disabled if her impairments are not "severe." *Simmons,* 264 F.3d at 754; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). An impairment is "not severe" if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities. *See Bowen v. Yuckert,* 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Id.* at 158, 107 S.Ct. 2287 (O'Connor, J., concurring); 20 C.F.R. § 404.1521(a). If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two. *Page v. Astrue,* 484 F.3d 1040, 1043 (8th Cir. 2007). It is the claimant's burden to establish that her impairment or combination of impairments are severe. *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir. 2000). Severity is not an onerous requirement for the claimant to meet, *see Hudson v. Bowen,* 870 F.2d 1392, 1395 (8th Cir. 1989), but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing. See, e.g., *Page*, 484 F.3d at 1043-44; *Dixon v. Barnhart,* 353 F.3d 602, 605 (8th Cir. 2003); *Simmons,* 264 F.3d at 755; *Gwathney v. Chater,* 104 F.3d 1043, 1045 (8th Cir. 1997); and, *Nguyen v. Chater,* 75 F.3d 429, 431 (8th Cir. 1996).

A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms (see [20 C.F.R.] § 404.1527). 20 C.F.R. § 404.1508.

Plaintiff argues that the evidence of record was contrary to the ALJ's determination that her mental impairments did not cause more than minimal limitation in her ability to perform basic mental work activities. (Doc. 12, pp. 10) Plaintiff's argument lacks merit.

There are three steps used in evaluating whether a Plaintiff's mental impairment is severe. In applying the special technique the ALJ must first evaluate Plaintiff's symptoms, signs, and laboratory findings to determine whether Plaintiff had a medically determinable impairment. Once the ALJ has established Plaintiff has a medically determinable impairment, the ALJ must rate the functional limitation using four broad functional areas: activities of daily living; social functioning; concentration, persistence, and pace; and, decompensation. The ALJ is to rate the degree of functional limitation in the first three areas as none, mild, moderate, marked, and extreme. The ALJ will rate decompensation as none, one or two, three, four or more. After rating the Plaintiff's functional limitation resulting from Plaintiff's impairment, the ALJ determines the severity of the Plaintiff's impairments. If the ALJ rates the degree of claimant's limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that claimant's impairment(s) is not severe, unless the evidence otherwise indicates that there is more

than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(b)-(d), 416.920a(b)-(d).

In the present case, the ALJ determined Plaintiff's depressive disorder and anxiety disorder were medically determinable impairments. (T. 25) The ALJ then rated the Plaintiff's functional limitations. The ALJ determined Plaintiff had mild limitation regarding her activities of daily living.  In making this determination, the ALJ took into consideration Plaintiff's Function Reports where she noted no problems with personal care, she cooked, cleaned, and washed laundry. A third party, Mary Jo Kenny, completed a Function Report, and she also stated Plaintiff did not have any problems with personal care, she cooked, and performed housework. Dr. Efird noted Plaintiff shopped independently and handled personal finances. (T. 26)

In the area of social functioning, the ALJ determined Plaintiff had mild limitation. Plaintiff's hearing limited her more than her mental impairments. Plaintiff indicated she did not spend time with people due to her hearing difficulties. Ms. Kenny indicated Plaintiff's hearing and depression interfered with her ability to engage in social activities. While Dr. Efird noted Plaintiff's hearing problems limited her social activities, she communicated and interacted in a reasonably socially adequate, intelligible, and effective manner. (T. 26)

In the third functional area of concentration, persistence, or pace, the ALJ determined Plaintiff had no limitation. While Plaintiff indicated she had difficulty with spoken instructions, due to her hearing difficulties, she was able to follow written instructions well. Dr. Efird opined Plaintiff had the capacity to perform basic cognitive tasks, she tracked and responded adequately during the evaluation, and she showed no remarkable problems with persistence. (T. 26) Concerning the

fourth area, the ALJ found that Plaintiff had not experienced any episodes of decompensation of extended duration. (T. 27)

Because Plaintiff's medically determinable impairments caused no more than mild limitation in any of the first three functional areas, and there were no episodes of decompensation, the ALJ determined Plaintiff's medically determinable mental impairments were non-severe. (T. 27)

The ALJ conducted a proper analysis of Plaintiff's mental impairments. While the Plaintiff now argues that her mental impairments were severe, she testified her anxiety was "all right" and, since she quit her job, her depression had subsided. (T. 57) *See Gates v. Astrue*, 627 F.3d 1080, 10825 (8th Cir. 2010) (finding Plaintiff depression was not severe, because it was situational in nature, related to marital issues, and improved with a regimen of medication and counseling). Further, Plaintiff had not sought inpatient or outpatient mental health treatment. (T. 396) *See Gowel v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). Plaintiff's lack of mental health treatment, and the situational nature of her depression, further supported the ALJ's finding of her depression and anxiety not severe.

Plaintiff had the burden of showing a severe impairment significantly limited her mental ability to perform basic work activities. *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir. 2001). The undersigned finds substantial evidence supported the ALJ's determination of Plaintiff's severe impairments of disorder of the bilateral knees and marked hearing loss in the right ear and reduced hearing in the left ear, but not the other alleged impairments.

12

***Polaski* Credibility Analysis:**

Plaintiff argues the ALJ erred in his credibility determination. (Doc. 12, pp. 13-14) It is the ALJ's duty to determine the Plaintiff's RFC. Before doing so, the ALJ must determine the applicant's credibility and how the Plaintiff's subjective complaints play a role in assessing her RFC. *Pearsall,* 274 F.3d at 1217-18.

The ALJ must give full "consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and, (5) functional restrictions. The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. *Polaski v. Heckler*, 739 F.2d 1230, 1322 (8th Cir. 1984).

To conduct the proper *Polaski* analysis, "[m]erely quoting *Polaski* is not good enough, especially when an ALJ rejects a claimant's subjective complaints of pain." *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir. 1995). Instead, "*Polaski* requires that an ALJ give full consideration to all of the evidence presented relating to subjective complaints." *Ramey v. Shalala*, 26 F.3d 58, 59 (8th Cir. 1994). To that end, "[w]hen making a determination based on these factors to reject an individual's complaints, the ALJ must make an express credibility finding and give his reasons for discrediting the testimony." *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996) (citing *Hall*, 62 F.3d at 223). Such a finding is required to demonstrate the ALJ considered and evaluated all of the relevant evidence. *See Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995) (citing *Ricketts v.*

*Secretary of Health and Human Servs.*, 902 F.2d 661, 664 (8th Cir. 1990)). However, if "the ALJ did not explicitly discuss each *Polaski* factor in a methodical fashion," but "acknowledged and considered those factors before discounting [the claimant's] subjective complaints of pain .... [a]n arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably had no practical effect on the outcome of the case." *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996) (citing *Benskin v. Bowen*, 830 F.2d at 883).

While an ALJ may not disregard subjective allegations of pain merely because they were not fully supported by objective medical evidence, *Polaski*, 739 F.2d at 751, an ALJ is entitled to make a factual determination that Plaintiff's subjective complaints of pain were not credible in light of objective medical evidence to the contrary. *See* 20 C.F.R. §§ 404.1528, 404.1529 (a physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the Plaintiff's statements.) In the present case, the ALJ gave multiple valid reasons for finding Plaintiff's subjective complaints not entirely credible, and the Court defers to those credibility findings. See *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (deference to ALJ's credibility determination is warranted if it is supported by good reasons and substantial evidence).

The ALJ took into account Plaintiff's subjective complaints of knee pain by limiting her to light exertional work. Regarding Plaintiff's hearing loss, the ALJ limited her RFC to work that did not require excellent hearing.

Plaintiff argues the ALJ relied on her ability to perform household chores as evidence that her subjective complaints of pain were not fully credible. (Doc. 12, pp. 14) Not entirely so. The ALJ

considered factors other than Plaintiff's ability to clean house in assessing her credibility. For instance, Plaintiff indicated in her Function Report she washed laundry, prepared meals, shopped for groceries, and walked approximately one-half mile before she needed to rest. Further, C.O. Palmer, audiologist, recommended and Plaintiff obtained a hearing amplification device in 2007. Plaintiff continued to work after receiving her hearing amplification device, and she did not stop working until June 28, 2012, when she quit her job. Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005); and, *Gowelll,* 242 F.3d at 798. Moreover, Plaintiff had not complained of knee pain since her follow up examination with Dr. Birk on November 30, 2009. (T. 296-297) *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider).

Because the ALJ's credibility determination was supported by good reasons and substantial evidence, the Court concludes that it is entitled to deference. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006); *Dunahoo v. Apfel*, 241 F.3d at 1037 (holding that ALJ's decision to discredit plaintiff's testimony will be upheld if he gives a good reason for doing so, even if every factor is not discussed in depth).

## **RFC Determination:**

Plaintiff argues the ALJ erred in his RFC determination concluding Plaintiff could perform the physical requirements of light work. (Doc. 12, p. 12) RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical

15

records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace." "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.)

In assessing Plaintiff's RFC, the ALJ considered Plaintiff's testimony at the hearing, disability and function reports, Dr. Birk's treatment records, C.O. Palmer's audiologist examination, Dr. Manning's examination records, the third party function report, and the state agency medial consultative examinations. (T. 28-30)

Plaintiff argues the combination of knee pain and additional impairments of plantar fascial fibromatosis, history of back strain and spasm, hypotension, dizziness, fatigue, and a work record that showed increased pain when standing and walking all day on a hard surface clearly showed Plaintiff could not stand and walk for six hours per day or lift the weight required of light work.

(Doc. 12, pp. 12-13)  Plaintiff is mistaken. In her application for disability, and at the hearing, Plaintiff did not allege the impairments of a history of back strain and spasm, hypotension, and a work record that showed increased pain when standing and walking all day on a hard surface.  The Eighth Circuit has repeatedly stated that an ALJ has no duty "'to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" *Gregg v. Barnhart,* 354 F.3d 710, 713 (8th Cir. 2003) (quoting *Pena v. Chater,* 76 F.3d 906, 909 (8th Cir. 1996)); *see also Brockman v. Sullivan,* 987 F.2d 1344, 1348 (8th Cir. 1993) ("The ALJ, however, had no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability."); *Matthews v. Bowen,* 879 F.2d 422, 424 (8th Cir. 1989) (ruling that ALJ did not err in not ordering consultative examination before concluding claimant had no mental impairment where claimant did not allege disability due to mental impairment and presented only minimal evidence of anxiety).

On the other hand, Plaintiff did allege the impairments of plantar fascia fibromatosis, vertigo, hypertension, and fatigue; however, the medical evidence of record was sparse with regard to these impairments. (T. 55-56, 308, 324, 350, 357, 358, 406) "A claimant's allegations of disabling pain may be discredited by evidence that he or she has received minimal medical treatment and/or has taken medications, other than aspirin, for pain only on an occasional basis." *See Williams v. Bowen*, 790 F.2d 713, 715 (8th Cir. 1986) (citing *Weber v. Harris,* 640 F.2d 176, 178 (8th Cir. 1981)).

Plaintiff's treatment records supported the ALJ's RFC determination. Dr. Birk performed arthroscopic surgery on Plaintiff's knees in 2009. Plaintiff received little treatment following the surgery. Dr. Parrott noted, on several occasions, that Plaintiff had normal tone, motor strength, and normal movement in all of her extremities. (T. 310, 314, 321, 326, 331, 335) Further, there were

17

no additional complaints of knee pain after June 14, 2012, and Plaintiff's amended onset date of disability was June 28, 2012. (T. 40, 311) *See Forte*, 377 F.3d at 895 (holding that lack of objective medical evidence is a factor an ALJ may consider).

As for Plaintiff's hearing loss, Plaintiff underwent an audiological evaluation by Dr. Manning at the Ear, Nose, and Throat Center of the Ozarks on October 15, 2012. The results showed Plaintiff had mild to moderately severe sensorineural hearing loss, AS, and mild to severe sensorineural hearing loss, AD. Dr. Manning observed Plaintiff's voice/speech modulation was fluent with satisfactory articulation and appropriate for her age. Dr. Manning assessed Plaintiff with unspecified peripheral vertigo, sensorineural hearing loss unspecified, deviated nasal septum, and unspecified hypothyroidism. (T. 406) Dr. Manning indicated Plaintiff was a candidate for hearing amplification. (T. 406) On November 17, 2012, C.O. Palmer, M.S., CCC-Audiologist at the Palmer Hearing Laboratory, wrote a letter indicating he had last seen the Plaintiff on March 5, 2007. Plaintiff's hearing was evaluated at that time, and she had 40% hearing in her right ear with poor word-recognition and a mild sensorineural hearing loss in her left ear with excellent word-recognition. Mr. Palmer recommended amplification and she was fitted with a Phonak Mini-Valeo open fit hearing aid in her left ear. (T. 409)

Moreover, Dr. Wellons reviewed the medical evidence on October 23, 2012, and determined Plaintiff had the RFC to perform light work with a restriction from jobs requiring excellent hearing. (T. 73) Dr. Payne reviewed the evidence on November 20, 2012, and determined Plaintiff also had the RFC to perform light work with a restriction from jobs requiring excellent hearing. (T. 97)

Finally, the record was devoid of evidence to suggest that Plaintiff had difficulty hearing or understanding her attorney or the ALJ in the administrative hearing. *See Lacroix v. Barnhart,*, 465

18

F.3d 881, 889 (8th Cir. 2006) (holding that fact that plaintiff used hearing aids, read lips, and did not experience difficulty hearing or understanding the ALJ weighed against her claim for disability).

The ALJ's RFC was consistent with the medical records and he accounted for Plaintiff's limitations. While it is the ALJ's duty to develop the record, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five. *Harris v. Barnhart,* 356 F.3d 926, 931 n. 2 (8th Cir. 2004). Considering all the evidence of record, the undersigned finds the RFC determined by the ALJ is supported by substantial evidence.

**<u>Step Four Analysis:</u>**

Plaintiff's final argument is that the ALJ erred at step four of his analysis when he determined Plaintiff could return to her past relevant work as a boot and shoe laborer and a general sales clerk. (Doc. 12, p. 14) At step four, the ALJ determines "whether a claimant's impairments keep [her] from doing past relevant work." *Wagner v. Astrue,* 499 F.3d 842, 853 (8th Cir. 2007) (quoting *Jones v. Chater,* 86 F.3d 823, 826 (8th Cir. 1996)). If "the claimant has the [RFC] to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." *Lowe v. Apfel,* 226 F.3d 969, 973 (8th Cir. 2000). The burden at step four remains with the claimant to prove his RFC and establish that he cannot return to her past relevant work. *Moore v. Astrue,* 572 F.3d 520, 523 (8th Cir. 2009); *Dukes v. Barnhart,* 436 F.3d 923, 928 (8th Cir. 2006); *Vandenboom v. Barnhart,* 421 F.3d 745, 750 (8th Cir. 2005).

In determining whether Plaintiff could return to her past relevant work, the ALJ considered both what Plaintiff actually performed and the testimony of a Vocational Expert ("VE"), consistent with the *Dictionary of Occupational Titles* ("DOT"), as to what was generally performed in the national economy. The VE testified that the DOT classified Plaintiff's past relevant work as a boot and shoe laborer as medium work; however, it had not been updated since 1977. (T. 49) Accounting for newer technology, and Plaintiff's testimony, the VE believed Plaintiff actually performed the job at a light level. (T. 50) The VE also testified Plaintiff's past relevant work as a general sales clerk at Dollar General was classified as light semi-skilled work. (T. 50)

With the aid of the VE and Plaintiff's testimony, the ALJ determined Plaintiff was capable of performing light past relevant work as a boot and shoe laborer and a general sales clerk. (T. 30-31). *See Wright v. Astrue*, 489 Fed. Appx. 147, 149 (8th Cir. 2012), citing 20 C.F.R. §§ 404.1560(b)(2), 416.960(b); *Wagner*, 499 F.3d at 853-854 (an ALJ can "consider the demands of the claimant's past relevant work either as the claimant actually performed it or, as here, as performed in the national economy.") The undersigned finds substantial evidence supports the ALJ's determination that Plaintiff could perform her past relevant work as a boot and shoe laborer and a general sales clerk. The ALJ's determination was supported by objective medical evidence, including the opinions of treating physicians and state agency medical consultants, that Plaintiff could perform light work except she could not perform work requiring excellent hearing.

## IV.    CONCLUSION

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's Decision denying the Plaintiff benefits. It is recommended that the ALJ's Decision be affirmed, and that Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 14th day of September, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

21